FLEMING, ADMINISTRATRIX *v.* MISSOURI & ARKANSAS RAILWAY COMPANY.

4-5482                                   . 128 S. W. 2d 986

Opinion delivered May 15, 1939.

*Brewer & Cracraft,* for appellant.

*Jo M. Walker* and *W. W. Sharp,* for appellee.

GRIFFIN SMITH, C. J. We adopt appellant's statement of the case, as follows:

"This appeal is from a directed verdict for the defendant in a suit brought by the administratrix of the estate of Carl Allen Fleming.

"The deceased was killed on the night of October 9, 1935, at approximately 11:30, due to a collision between the automobile he was driving and a train of freight cars belonging to the Missouri and Arkansas Railroad Company, appellee, which had blocked the crossing where highway No. 70 intersects the railway a short distance west of the town of Wheatly in Monroe county, Arkansas. There is a curve in the highway a short distance west of this crossing and a slight decline from the curve down to the track. There had been a number of serious accidents at the same point prior to this fatal injury and a number thereafter, resulting finally in the construction by the railroad company of an automatic barrier. The accident happened on a dark, rainy night, and the deceased had never been over this highway before and was

at the time on his way from Texas to points east of the Mississippi river.

"According to the testimony offered by appellant, there were no flares or signal lights or any other warnings of the train blocking the highway at the time of the accident.

"The court excluded all evidence of the number of accidents that had happened at this point under similar circumstances, which the appellant had offered for the purpose of proving that there was a dangerous condition of which the railroad company had notice.

"At the close of the plaintiff's case, the defendant moved and was granted a directed verdict, and the case is on appeal here on the questions: (1) Whether the evidence offered by the plaintiff was legally sufficient to support a verdict, tested by the rule that the testimony must be given its strongest probative force in favor of the plaintiff's cause of action. (2) Should the excluded evidence, which would have established that a large number of accidents had occurred at this crossing, have been admitted for the purpose of showing existence of and notice to the railroad company of the hazardous condition of the crossing? (3) Was this injury to the deceased caused by the running of a train which cast the burden of proof upon the railroad company, upon proof of the happening of the accident? (4) Could the deceased be said to be guilty of contributory negligence as a matter of law?"

Gordon Duncan, testifying for appellant, said that he was returning from Memphis to his home in Brinkley. He did not observe any flares at the crossing; was on the east side of the track, but could see under the train of cars; attention was attracted to the blocked highway. A light was shining through between the box cars. The weather was "misting rain and dark."

The question was asked: "I now want to ask you if, in your knowledge and observation, this crossing is dangerous and deceptive to persons approaching it, particularly from the west, going east?"

An objection was sustained.

The witness further testified—"It must have been ten or twelve or fifteen cars from where Mr. Fleming hit the side of the train up to the engine. I do not know just how far it was back to the caboose. It was some distance. . . . . It looked as though the [automobile] had hit the train and [had been knocked] sideways. The light of the [automobile] was shining and continued to burn after it was hit. The train was coupled up. . . . As to the curve of the road coming from Brinkley down to the crossing, I would not say exactly. I am by there every week, but I would say it is about 100 yards from the top of the hill; you come up a hill and the curve is around this way [indicating to the left]. The top of the hill is about 100 yards. There is a little decline running to the track."

R. C. Wise had been to Brinkley. After starting home it began to mist, and was cloudy. Witness was with his wife, traveling in their automobile at thirty or thirty-five miles per hour. Half way between Brinkley and Wheatley Fleming passed them, "driving at a high rate of speed—forty to forty-five miles an hour." When witness reached the crossing he could see the tail light of an [automobile]. He remarked to Mrs. Wise that it was the car that had passed them, and that it had run into a train. —"As I approached the train a brakeman and flagman came from some point, which to my mind was from between some cars. I know he was coming from the other side of the train, and he flagged me down, thinking there would be another wreck; but I saw the situation before I arrived, and drove on the shoulder of the highway. . . . The two trainmen had lighted lanterns, . . . but had not gotten to the car when we arrived. This is the only crossing accident that I have observed at this place, but I know of others that have happened. I know of four or five that have happened."

Fleming had not previously been over Highway 70 between Brinkley and Wheatley. This fact is relied upon by appellant to distinguish the instant suit from *Gillenwater* v. *Baldwin, Trustee, et al.*, 192 Ark. 447, 93 S. W. 2d 658.

In the Gillenwater Case the car driver approached a blocked crossing at a point on the highway with which he was familiar. In the opinion it is said: "The record is silent as to the purpose for which the train stopped or how long it had been there when appellant Gillenwater ran into the flat car. For aught that appears, it may have just come to a standstill, and time sufficient may not have elapsed for the brakeman to hang out a lantern or other signal or to place a watchman to warn the public who might be approaching. The record does not reflect that the train had stopped and obstructed the street in violation of any ordinance or had been there for an unreasonable length of time without putting out a signal."

It is the settled rule that whether failure of a railroad company to station a flagman at a crossing constitutes an omission of such care as an ordinarily prudent person would use under the same or similar circumstances, is a question of fact where there are obstructions which materially hinder the view of approaching trains, provided the crossing is used frequently by the public, and numerous trains are run. Inasmuch as permanent surroundings may create a hazardous condition, the rule of care goes further and requires precautions where special dangers arise at a particular time. It is said that the obligation exists, at an abnormally dangerous crossing, to provide watchmen, gongs, lights, or similar warning devices not only for the purpose of giving notice of approaching trains, but such care is to be equally observed where the circumstances make their use by the railroad reasonably necessary to give warning of cars already on a crossing, whether standing or passing, as where a crossing is more than ordinarily dangerous because of obstructions to the view interfering with the visibility of the responsible train operatives, or those approaching the track.

Appellant seeks to invoke the rule of care on the theory that other wrecks or collisions had occurred where Fleming was injured; that the frequency of accidents was sufficient, as a matter of law, to put appellee on notice of the special hazard alleged, and that ordinary prudence

required the placing of signals at a point plainly observable to users of the highway.

These contentions would be availing if the special circumstances heretofore mentioned were present. But they were not. The railroad crosses the highway at almost a right angle, and the approach is straight for at least a hundred yards. No more effective precaution could have been adopted by the unfortunate driver than reasonable attention to the highway in front of him, under the illumination of his own headlights.

In *The Kansas City Southern Railway Company* v. *Briggs,* 193 Ark. 311, 99 S. W. 2d 579, (quoting part of a syllabus), it was said: "Since the train was at the station not exceeding three or four minutes, the company was not required to keep a watchman at the crossing or to display a light signal or give other warning of the standing train."

*Chicago, Rock Island & Pacific Railway Company* v. *Sullivan,* 193 Ark. 491, 101 S. W. 2d 175, is decisive of the case at bar. There the appellee was traveling from Texas to El Dorado, Arkansas, in a car operated by Mitchell. Appellee repeatedly cautioned Mitchell, who at no time drove faster than fifteen or twenty miles an hour. They approached the crossing at about nine or half past nine o'clock at night. The first information appellee had that they were going on the railroad was when the automobile hit the train. They struck the first car back of the locomotive. The engineer "never blew the whistle nor rang the bell." After the collision the train stopped with the caboose just above the crossing. It had been raining that day, but was not raining at the time of the accident. The car driver said his brakes were bad and he was unable to stop. Mr. Justice Butler, who wrote the opinion, said:

"When the testimony of the appellee is accepted as true, and the greatest weight given to it, we are of the opinion that it fails to establish actionable negligence on the part of the appellants. While appellee stated that the train whistle was not blown or the bell sounded, she admitted that the automobile struck the box car behind

the locomotive. Therefore, the locomotive was blocking. the highway as the automobile approached, and was of itself notice of its presence. The only negligence testified to was the failure of the train crew to sound the whistle or ring the bell. . . . Assuming there were no signals given, this was not the proximate cause of the collision, which can be attributed only to the inattention of the driver of the automobile, and its defective condition.''

So, in the instant case, appellant's intestate, although not familiar with the crossing, was using a public highway of ample dimensions, and at a point where a view straight ahead for three hundred feet necessarily enabled him, if he had been exercising ordinary prudence, to see the blocked crossing. As expressed by Chief Justice Hill in *St. Louis & San Francisco Railroad Company* v. *Ferrell,* 84 Ark. 270, 105 S. W. 263, and quoted with approval by Judge Butler in the Sullivan Case, ''The object of signals is to notify people of the coming of the train. Where they have that knowledge otherwise, signals cease to be factors.'' The same rule of reason applies in derogation of a cause of action by one who, by the exercise of ordinary care, would have seen a blocked crossing in ample time for self-preservation. The freight cars were on the crossing, the highway was straight for a distance of a hundred yards, Fleming's headlights were ample, there were no abutting buildings or other obstructions, the train was not suddenly projected across the highway; and, although the weather was misty and perhaps there had been a slight rain, it is not shown that visibility was extraordinarily poor. Even if such had been the case, that fact in itself enjoined upon Fleming additional care for his own safety. He was traveling, as one of appellant's witnesses said, ''at a high rate of speed.'' Photographs introduced in evidence show that the ''hill,'' and ''curve,'' are a sufficient distance from the railroad to contribute to the element of safety in so far as the crossing is concerned, for one driving with reasonable prudence on a dark and misty night (and particularly one who is unfamiliar with the route) would be ex-

pected to slow down at the point of curve; and beyond the curve, beginning at point of tangent, there is an unobstructed view to the track for three hundred feet. The "little incline" which dips from the curve to the crossing is negligible, not exceeding seventy-six hundredths of one per cent.

In any view that may be taken, Fleming's inattention was the proximate cause of the accident. His negligence was greater than that of appellee, even though it should be conceded that similar accidents had occurred at the point in question.

*Second.* It was not error to exclude evidence of other accidents. Mere proof that some one else had been injured at this crossing would not establish appellee's culpability, and there is no presumption that when a collision occurs one of the involved parties is negligent to the exclusion of the other. For all that the record may show, the conduct of each of those who suffered misfortune may have been the sole cause of the happening. It is not urged that the track was physically faulty, or that an obligation to repair and maintain had been disregarded.

Affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.