LLOYD, ADMINISTRATRIX, *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

4-7330                                        179 S. W. 2d 651

Opinion delivered April 17, 1944.

*W. Leon Smith* and *Arthur L. Adams,* for appellant.

*Barrett & Wheatley,* for appellee.

KNOX, J. Sam Lloyd, the deceased husband of appellant, at and for some months prior to the date of his death, resided with his wife and family at Blytheville, and was employed by Frisco Transportation Company, as a driver of large freight trucks, running between Blytheville and Memphis. About 2 o'clock a. m., October 7, 1941, while on a return trip from Memphis, he was killed when he drove his truck into the side of a box car connected in and forming a part of appellee's train, which was and for some six or seven minutes had been, standing on and over the crossing formed by the intersection of the railroad and U. S. highway 61, just north of and within the corporate limits of Blytheville. From marks on the highway an expert deduced and testified that the truck skidded 130 feet to a point about 20 feet from the box car, where it appeared the brakes were released. The truck continued on its course and struck with such force as to wedge the hood of the truck under the box car, tilting the same to an angle of 45 degrees, requiring the use of a wrecker to lift the box car before the truck could be pulled out from under it. The blow was sufficiently violent to break the coupling on the end of the box car.

The highway with little or no change in elevation runs straight north a distance of more than two miles before crossing the railroad at right angles, and then continues straight for some six blocks, where it turns

east. An exceedingly large volume of traffic moves over this highway.

This case was presented upon the theory that the scene when viewed from the moving truck through the open doors of the box car in the surrounding lights and shadows peculiar to this crossing created an illusion that the street was open and unobstructed, and that such illusion constituted an extraordinary hazard, which imposed upon appellee the duty to give deceased and other travelers on the highway special warning thereof through the use of watchmen, gongs, bells, lights, or other means commensurate with the danger.

It is appellant's theory that the character and location of the box car, the width and location of the opening created by the open doors therein, the rays from street lights high on poles, and the glow from neon signs, all to the north and beyond the crossing, together with darkness to the south out of which deceased approached the crossing, all combined to create this illusion.

The facts most favorable to appellant, tending to establish the elements constituting the alleged illusion may be stated as follows: The box car was of the automobile type, the dimensions of which are not disclosed. It extended entirely across the pavement, which was approximately twenty feet in width. In the center of each side of the car and directly opposite each other, there were doors about 12 feet wide, both of which at the time were fully opened, permitting unobstructed vision through the openings therefor. Such openings extended from the right-hand edge of the pavement to a point two feet to the left of the center line thereof. There were no lights of any kind in the direction from which deceased approached. The crossing was the line of demarkation between darkness and light. Beginning at a point 20 feet north of the crossing and continuing at intervals of a block along the left side of the highway were small street lamps, hung high on light poles. These lights were visible both over and through the car.

A tourist court was located on the left side of the highway about one block north of the crossing, in front of which was a sign in which the illuminated word "tourist" automatically flashed on and off. Seventy-five feet north of the crossing and 60 feet from the edge of the pavement, on the right side thereof going north, there was situated a filling station, where a neon illuminated clock was burning.

Some four blocks north of the crossing there was another filling station, in front of which there was a neon sign with illuminated bands around it, carrying an illuminated "66" emblem. These neon signs gave off a bright glare or glow, and illuminated the air so that they could be seen farther than an ordinary light.

Other signs and lights were located along the street, but there is no substantial evidence that any such were burning at the time of the accident.

The deceased was thoroughly familiar with this railroad crossing. For several months he had driven a freight truck regularly to and from Memphis. His regular run required him to leave Blytheville shortly after noon of each day, drive to Memphis and return and arrive at Blytheville about 2 o'clock the following morning. He thus passed over this crossing at least twice each day—one such daily crossing occurring in the early morning, when the rays from the street lights and electric signs were similar to those existing on the morning of the tragedy.

The trial court directed the jury to return a verdict in favor of appellee, and from the judgment based upon such verdict comes this appeal.

The precautions which railroads should exercise to warn travelers of the blocking of highways by trains standing at crossings has frequently had the attention of this court. *Mo. Pac. R. R. Co. v. Price,* 182 Ark. 801, 33 S. W. 2d 336; *Gillenwater v. Baldwin,* 192 Ark. 447, 93 S. W. 2d 658; *Lowden v. Quimby,* 192 Ark. 307, 90 S. W. 2d 984; *Kansas City So. W. Ry. Co. v. Briggs,* 193 Ark. 311, 99 S. W. 2d 579; *C., R. I. & Pac. Ry. Co. v. Sullivan,*

193 Ark. 491, 101 S. W. 2d 175; *Flemming* v. *Mo. & A. Ry. Co.*, 198 Ark. 290, 128 S. W. 2d 986; *Mo. Pac. Ry. Co.* v. *Hood,* 199 Ark. 520, 135 S. W. 2d 329; *Thomasson* v. *C., R. I. & Pac. Ry. Co.,* 203 Ark. 159, 157 S. W. 2d 7.

Although, as was stated by Mr. Justice BAKER in *Mo. Pac. R. Co.* v. *Powell,* 196 Ark. 834, 120 S. W. 2d 349, the effect of these cases is that ordinarily "a train occupying the crossing is notice to parties approaching in an automobile," this court has recognized the fact that extraordinarily hazardous conditions may exist, or occur, at certain crossings, which would impose upon the railroad the duty to give special warning that a train blocks such crossing. Thus in the case of *Fleming* v. *Mo. & Ark. Ry. Co., supra,* it was said: "It is the settled rule that whether failure of a railroad company to station a flagman at a crossing constitutes an omission of such care as an ordinarily prudent person would use under the same or similar circumstances, is a question of fact where there are obstructions which materially hinder the view of approaching trains, provided the crossing is used frequently by the public, and numerous trains are run. Inasmuch as permanent surroundings may create a hazardous condition, the rule of care goes further and requires precautions where special dangers arise at a particular time. It is said that the obligation exists, at an abnormally dangerous crossing, to provide watchmen, gongs, lights, or similar warning devices not only for the purpose of giving notice of approaching trains, but such care is to be equally observed where the circumstances make their use by the railroad reasonably necessary to give warning of cars already on a crossing, whether standing or passing, as where a crossing is more than ordinarily dangerous because of obstructions to the view interfering with the visibility of the responsible train operatives, or those approaching the track."

The facts in the Fleming case were held insufficient to warrant application of the rule there announced, and in fact we are cited to, and our own investigation reveals, no case in our reports where such rule has been applied. In many, if not all, of the cited cases the record reveals

facts tending to establish conditions of extraordinary hazard much stronger than those disclosed by the record here.

Appellant's argument that an illusion was created is based primarily upon the fact that the doors of the box car were open so that a driver approaching the crossing could see through, and thus be led to believe that nothing obstructed the crossing.

The street lights being visible over the top of the box car could not have contributed to this illusion. That the crossing constituted the line of demarkation between light and dark appears to have little if any significance. There were no blinding rays of light shining directly into the eyes of the driver of the truck. The neon lighted clock at the filling station was 60 feet off the edge of the highway—the tourist sign was a block, and the "66" sign four blocks from the scene of the accident.

In the case of *Gillenwater* v. *Baldwin, supra,* recovery was denied where on a dark night an automobile at a crossing struck a flat car connected between two box cars. It, of course, goes without saying that a much larger area of unobstructed view was afforded along the full length of the flat car, with no roof above it, than could have existed here, where of necessity such view was confined to the width and height of the door openings.

While the openings might have afforded an unobstructed view on the right-hand side of the road, it cannot be denied that as the truck approached the crossing its headlights, if properly adjusted and burning, would have illuminated the whole of the box car, disclosing its full length and height. Viewing the testimony in the light most favorable to appellant, it still must be conceded that for at least eight feet along the left side of the pavement the view was obstructed by the walls of the box cars. Likewise, the roof and floor of the box car would have been outlined across the entire width of the pavement under the rays of the headlights.

It is clear, therefore, that if deceased had been giving proper attention to the road ahead of him he would have seen this box car in time to have stopped his truck, and thus would have avoided the collision and saved his life. Deceased's own inattention was the proximate cause of the accident. Assuming that the record discloses negligence on the part of appellee, still the deceased was guilty of contributory negligence. Unless the negligence of the deceased was of a less degree than that of appellee, appellant cannot recover. (Pope's Digest, § 11153.) Ordinarily the relative degrees of negligence which permit or defeat the right of recovery in cases of this type are questions of fact to be determined by a jury; yet where the question becomes one of the legal sufficiency of the testimony it becomes a question of law for the court. *St. L.-S. F. Ry. Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576; *Mo. Pac. R. Co.* v. *Davis,* 197 Ark. 830, 125 S. W. 2d 785; *Mo. Pac. R. Co.* v. *King,* 200 Ark. 1066, 143 S. W. 2d 55.

There is little or no evidence tending to establish negligence on the part of appellee. Such negligence, if it existed at all, was slight. The evidence is clear that the negligence of the deceased greatly exceeded any negligence on the part of appellee. The fact that although such box car could have been seen for a great distance and that the brakes were not applied until the truck was within 150 feet thereof, shows that deceased failed to give proper attention to the road ahead. The distance which the truck skidded after the brakes were applied and the force and violence attendant upon the impact, even after the forceful application of the brakes, clearly shows that such truck was being operated at an excessive and dangerous rate of speed. The action of the deceased in driving at an excessive and dangerous rate of speed, while failing to exercise proper care to observe the road ahead constituted negligence which exceeded any negligence properly inferable from the facts disclosed by the record, and chargeable against appellee. Under these circumstances, the trial court did not err in directing a verdict for appellee, and the judgment is affirmed.