HAWKINS *v.* MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE.

4-9182·                                           228 S. W. 2d 642

Opinion delivered April 10, 1950.

*Cecil Grooms* and *Howard A. Mayes,* for appellant.

*Henry Donham* and *Daggett & Daggett,* for appellee.

LEFLAR, J.   Plaintiffs Hawkins and Hook suffered personal injuries and Hawkins' car was damaged in a collision with defendant's freight train at a highway-railroad crossing in the city of Paragould at about 2:00 a. m. on November 11, 1948. At the trial of plaintiffs' action brought to recover for these injuries to person and property, the Circuit Judge directed a verdict for the defendant at the close of all the evidence. From the judgment entered upon this directed verdict the plaintiffs appeal.

Since the verdict was directed for the defendant our examination of the evidence must be in its light most favorable to the plaintiffs. Had the case been sent to the jury for a verdict, the jury might have believed the evidence favoring the plaintiffs, and it is our task to determine whether the evidence thus favorably viewed could under the law have sustained a verdict for the plaintiffs.

Plaintiff Hawkins, a southeast Missouri farmer, had made a trip in his car from his home to Coal Hill, Ark., to hire cottonpickers. Plaintiff Hook, a neighbor, accompanied him. Hawkins had hired the needed pickers, who were to go to Missouri on a truck later, and he with Hook had at about 6:00 p. m. on November 10 started back to their home in Missouri. By 2:00 a. m. of the same night,

44

when the collision occurred, they had traveled the approximately 245 miles from Coal Hill to Paragould and were driving into that city from the west. Both were watching the road ahead.

The east-west highway in Paragould is crossed at about a 90-degree angle by defendant's railroad tracks. The tracks are raised some two or three feet above the highway, which inclines gradually up to the tracks on both the east and west. At the time plaintiffs approached from the west, at a proper speed for city driving and with their lowered lights in good condition, defendant's freight train was standing still on the track while trainmen were making repairs on the train, apparently at its front end. Neither Hawkins nor Hook saw the standing train till they were almost upon it. When they did see it, Hawkins applied his brakes instantly but was unable to avoid crashing squarely into the train, the front of his car being wedged beneath the boxcar which they struck. Both men were injured, and Hook was knocked unconscious. Hawkins with the aid of bystanders got the unconscious Hook out of the car. Just afterwards the train was pulled a few feet to the south, the trainmen being apparently unaware of the wreck. Plaintiffs' testimony was that the car was torn up both by the original crash and by being dragged afterwards. It was almost a total loss.

Both Hawkins and Hook testified that as they approached the crossing they could see the undimmed lights of a car facing them from the other side of the tracks, and that the undimmed lights blinded them somewhat. Also they saw a red, green and amber traffic light in operation in the middle of the street ahead of them, on the far side of the tracks. They say that they thought they had an unobstructed view down the highway, and that there were no active signals at the crossing to indicate that it was blocked by a train or anything else.

This apparent inconsistency in the plaintiffs' testimony, making it seem that they looked through a standing freight train as though it were a glass window, is explained by their testimony, and by the supporting tes-

timony of several other witnesses. For one thing, the raised track left an open space of two feet and nine inches beneath the freight car bottoms and above the rails, directly in an automobile driver's line of vision as he would look ahead on the highway. For another thing, the part of the train immediately in front of plaintiffs as they approached the crossing was an empty boxcar with the doors on both sides wide open. In the light of this evidence, it is entirely possible that a jury might conclude that plaintiffs were telling the truth when they said that they were carefully watching the highway ahead and saw through or under the standing train without ever seeing the train itself until they were practically beneath it.

To justify a verdict for plaintiffs, the jury would have to find (1) that defendant was negligent in the maintenance or operation of its train at the crossing and (2) that the alleged contributory negligence of the plaintiffs was of less degree than the negligence of the defendant. This is one of the situations in which our comparative negligence law, Ark. Stats., § 73-1004, is applicable, so that the contributory negligence of the plaintiffs will not bar their recovery unless it was equal in degree to or greater than the negligence of the defendant. *Lloyd, Admx., v. St. Louis S. W. Ry. Co.*, 207 Ark. 154, 179 S. W. 2d 651.

This Court has several times held that injured plaintiffs could not recover against railroad companies when automobiles were driven into the side of trains standing still on a highway crossing. *Lowden, Trustee, v. Quimby*, 192 Ark. 307, 90 S. W. 2d 984; *Gillenwater v. Baldwin, Trustee*, 192 Ark. 447, 93 S. W. 2d 658; *K. C. S. Ry. Co. v. Briggs*, 193 Ark. 311, 99 S. W. 2d 579; *Fleming, Admrx., v. Mo. & Ark. Ry. Co.*, 198 Ark. 290, 128 S. W. 2d 986; *Lloyd, Admrx., v. St. Louis S. W. Ry. Co.*, 207 Ark. 154, 179 S. W. 2d 651. Other cases have reached the same result when the automobile was driven into the side of a moving train. *Chicago, R. I. & P. Ry. Co. v. Sullivan*, 193 Ark. 491, 101 S. W. 2d 175; *Chipman v. Mo. Pac. R. Co.*, 195 Ark. 721, 114 S. W. 2d 14. From these cases it is conceivable that one might leap to the conclusion that

46

this Court has laid down a rule of law that a plaintiff can never recover when his automobile is driven onto a highway-railroad crossing into the side of a train. A reading of the cases cited makes it very clear that we have not laid down any such broad and all-embracing rule. We have not chosen to disregard the governing abstract principles of negligence and contributory negligence to the extent of saying that there never will be a crossing collision of that sort in which the railroad company or its employees are guilty of negligence, nor have we said that injured plaintiffs figuring in such collisions will always and invariably, in every case that arises, be guilty of negligence equal to or greater than that of the defendant railroad. On the contrary, in *Fleming, Admrx.,* v. *Mo. & Ark. Ry. Co.,* 198 Ark. 290, 294, 128 S. W. 2d 986, 988, one of the cases cited *supra,* we said:

"It is the settled rule that whether failure of a railroad company to station a flagman at a crossing constitutes an omission of such care as an ordinarily prudent person would use under the same or similar circumstances, is a question of fact where there are obstructions which materially hinder the view of approaching trains, provided the crossing is used frequently by the public, and numerous trains are run. Inasmuch as permanent surroundings may create a hazardous condition, the rule of care goes further and requires precautions where special dangers arise at a particular time. It is said that the obligation exists, at an abnormally dangerous crossing, to provide watchmen, gongs, lights, or similar warning devices not only for the purpose of giving notice of approaching trains, but such care is to be equally observed where the circumstances make their use by the railroad reasonably necessary to give warning of cars already on a crossing, whether standing or passing, as where a crossing is more than ordinarily dangerous because of obstructions to the view interfering with the visibility of the responsible train operatives, or those approaching the track."

The quoted language was repeated approvingly in *Lloyd, Admrx.,* v. *St. Louis S. W. Ry. Co.,* 207 Ark. 154,

158, 179 S. W. 2d 651, 652. It represents well established authority in other states as well as in Arkansas. The true rule is that such cases merely present questions as to whether there is substantial evidence of negligence in the defendant railroad and as to the comparative degree of the injured plaintiff's contributory negligence. See *Hendrickson* v. *Union Pac. R. Co.,* 17 Wash. 2d 548, 136 Pac. 2d 438, 161 A. L. R. 96.[1] A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury. *St. Louis S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215; *Mo. Pac. R. Co.* v. *McKamey,* 205 Ark. 907, 171 S. W. 2d 932; *Ozan Lbr. Co.* v. *Tidwell,* 210 Ark. 942, 198 S. W. 2d 182.

In the instant case we believe there was evidence from which the jurors might reasonably have found that the defendant through its employees failed to exercise the care which an ordinary prudent man would have exercised under the same or similar circumstances. The time of night, the lights visible across the track, the open space in the line of an autoist's vision above the raised tracks and beneath the bottoms of the stopped freight cars, the wide open doors of the boxcar through which lights across the track shone while the boxcar stood motionless and silent, the absence of active crossing signals of any kind, the absence of guard or watchman, the fact that this was on a principal street in the business section of a good-sized city, the fact that the train was then moved a distance down the track with neither sign nor signal given—all this was included in the evidence and if believed by the jury would indicate that defendant created, unintention-

---

[1] The cases are collected in a series of annotations in 15 A. L. R. 901, 56 A. L. R. 1114, 99 A. L. R. 1454, and 161 A. L. R. 111, the latter being the most complete collection of cases.

ally but perhaps carelessly, something like a trap for unwary night drivers. It may or may not be that defendant had time to post watchmen or set signals after stopping the train, but that is not decisive; it is possible that an ordinary prudent man in the position of defendant's employees would not have stopped a train with open boxcar doors on this raised crossing at all in the absence of opportunity to give adequate warning to the traveling public. We hold that there was evidence here from which the jury might have found negligence in the defendant.

Further, the jury might sensibly have found under the evidence that, though the plaintiffs were negligent, their negligence was of less degree than that of the defendant. Ark. Stats., § 73-1004. The testimony was that both plaintiffs were watching the road ahead, that the brakes and lights on their car were in good condition and properly employed, that their failure to see the standing train was due to no fault in the driving or in the lookout that both of them constantly maintained, and that they were to some extent blinded by the undimmed lights of a car facing them. They were strangers in the town and unfamiliar with the particular crossing. We cannot say that their evidence was under the circumstances so improbable, so contrary to the very nature of things, that a jury could not reasonably have accepted it, or part of it, and then have concluded that plaintiffs were less negligent than defendant was.

In reaching this decision we overrule no earlier cases. Each of the cases already cited, relied upon by defendant, is readily distinguishable. In *Chicago, R. I. & P. Ry. Co.* v. *Sullivan,* 193 Ark. 491, 101 S. W. 2d 175, *Chipman* v. *Mo. Pac. R. Co.,* 195 Ark. 721, 114 S. W. 2d 14, and other cases like them, the defendant's train was moving when it was struck, and the very fact of motion on the tracks ahead served as a warning signal to approaching drivers. In *Lowden, Trustee,* v. *Quimby,* 192 Ark. 307, 90 S. W. 2d 984, there was no evidence of surrounding circumstances such as in the principal case pointed to negligence in the defendant, and the plaintiff, keeping no lookout though familiar with the crossing, was guilty of a larger degree

of comparative negligence than is indicated by the plaintiffs' evidence here. *Gillenwater* v. *Baldwin, Trustee,* 192 Ark. 447, 93 S. W. 2d 658, involved a plaintiff who drove into a flatcar at a crossing with which he was familiar at 25 miles an hour without slowing down, stopping, looking or listening, taking it for granted that the street was clear. In *K. C. S. Ry. Co.* v. *Briggs,* 193 Ark. 311, 99 S. W. 2d 579, there was no evidence of negligence in the defendant other than that its train was stopped on a crossing, and the plaintiff who lived in the neighborhood and had observed the train nearby a few minutes previously ran squarely into it at about 6:30 p. m. without any extenuating circumstances.

*Fleming, Admrx.,* v. *Mo. & Ark. Ry. Co.,* 198 Ark. 290, 128 S. W. 2d 986, is the case already quoted from, stating in reference to proof of negligence in a defendant railroad that ''inasmuch as permanent surroundings may create a hazardous condition, the rule of care goes further and requires precautions where special dangers arise at a particular time.'' Besides, the evidence showed that the plaintiff in that case was traveling ''at a high rate of speed'' when he hit defendant's train, and there were no such extenuating circumstances as were testified to in the present case. It was easy there to conclude that the plaintiff's negligence was at least as great as, and probably much greater than, the defendant's.

*Lloyd, Admrx.,* v. *St. Louis S. W. Ry. Co.,* 207 Ark. 154, 179 S. W. 2d 651, is the only remaining case that deserves special notice.[2] In the *Lloyd* case, as in the instant case, there were open boxcar doors through which lights shone immediately ahead of the driver when he rammed his truck into the defendant's train on a crossing at 2:00 a. m. But there was no elevation of the tracks enabling the driver to see straight ahead beneath the cars, there were no blinding rays of light shining into his eyes from across the tracks, and the distance which the truck skidded after the brakes were applied—130 feet—showed that it was being operated at an excessive and dangerous

[2] Other cases such as *Thomasson* v. *Chicago, R. I. & P. Ry. Co.,* 203 Ark. 159, 157 S. W. 2d 7, add nothing to what has already been said, and need not be separately discussed.

50

rate of speed. The driver was thoroughly familiar with the road and the crossing. In this case likewise the conclusion was easy that the truck driver's negligence was clearly as great as or greater than the defendant's.

The evidence in the instant case enables us to arrive at no such clear conclusion concerning the negligence of plaintiffs Hawkins and Hook as compared with that of the defendant railroad. We hold that their case should have been left to the jury for determination.

The judgment of the Circuit Court is reversed and the cause is remanded for new trial.