**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Carlton KINARD, Appellee.**

**Carlton KINARD, Appellant,**

v.

**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellee.**

**Nos. 16841 and 16842.**

United States Court of Appeals
Eighth Circuit.

March 5, 1962.

Alston Jennings, Little Rock, Ark., made argument for Chicago, Rock Island & Pacific Railroad Company and was on the brief.

Melvin E. Mayfield, El Dorado, Ark., made argument for Carlton Kinard and William I. Prewett, and Bill J. Davis, El Dorado, Ark., were with him on the brief.

Before VOGEL and RIDGE, Circuit Judges, and GRAVEN, Senior District Judge.

VOGEL, Circuit Judge.

■ Carlton Kinard, plaintiff-appellee in No. 16,841, brought action against the Chicago, Rock Island and Pacific Railroad Company, defendant-appellant, to recover damages by reason of injuries received by him as a result of an accident occurring on February 18, 1960, at approximately 3:40 a. m. when he drove his automobile into the side of a moving freight train on South Washington Street in the City of El Dorado, Arkansas. In addition to compensatory damages of $100,000, plaintiff asked punitive damages in the sum of $50,000. The trial court refused to submit the issue of punitive damages to the jury, instructing on negligence and contributory negligence. The jury returned a verdict in plaintiff's favor in the amount of $3,000. Defendant appeals on the ground that the court erred in refusing its motions for a directed verdict and in failing to enter judgment in its behalf. Plaintiff cross-appeals in No. 16,842, asking that this court affirm the judgment for actual damages but that the case be otherwise reversed and remanded for trial on the single issue of punitive damages. The case was originally commenced in the Circuit Court of Union County, Arkansas. Diversity of citizenship and amount involved justified removal to federal court jurisdiction. The law of the State of Arkansas is controlling.

■ A resolution of the issues requires that the evidence presented at the trial before a jury be recited here in some detail. A great deal of the evidence was uncontradicted. Where conflicts arise, however, we must take that view which tends to support the jury's verdict in favor of the plaintiff and must accept all reasonable inferences arising therefrom which tend to sustain such verdict. With that in mind we consider the record.

Plaintiff is 27 years of age, married and the father of two children. For the four years preceding the accident he had been employed by the Ellis Watts Service Station and car rental and truck rental agency. On the day preceding the morning of the accident plaintiff had gone to work at ten o'clock in the morning. He got off duty at the service station at approximately nine o'clock that night. Thereafter, by prior arrangement, he went to work in a liquor store across

the street where he occasionally helped out. He remained there until closing time, about one a. m. the following morning. Thereafter he and two others went to a restaurant where they had food. According to plaintiff, when they came out of the restaurant "* * * it was snowing and ice, raining and freezing, * * *." They returned to the station, where plaintiff and one of his companions remained talking for some time. When plaintiff decided to leave for home, he got in his car, traveled east on Beech Street for a distance of two blocks, and then turned to his right on Washington. After making the turn on Washington, he was traveling in a southerly direction. He was going at approximately 25 miles per hour. At that time he testified it was "snowing, sleeting, raining, freezing weather". It was necessary to have his windshield wiper on. It was working.

At the point of accident six sets of railroad tracks belonging to the defendant cross Washington Street in an east-west direction. There is a railroad crossing or cross-buck sign north of the northernmost track on the west side of Washington Street for southbound traffic. A like cross-buck was located south of the tracks on the east side of Washington Street for the warning of northbound traffic. The crossing was not protected by any other warning signs or devices, and there was no flagman posted at the crossing at the time of the accident. The crossing was lighted by clusters of lights on four separate poles with five bulbs in each cluster. Two of the light clusters were located between tracks 3 and 4. There is one light cluster south of track 5 and one north of track 5. Track No. 6, being the southernmost track, is not as well lighted as the other tracks. It is slightly lower than Washington Street, but not enough so as to hide the wheels of the train.

As the plaintiff was proceeding south on Washington Street at a rate of speed of approximately 25 miles per hour, a freight train of the defendant was moving in an easterly direction on the south-ernmost track at a rate of speed of between three and five miles per hour. A brakeman was walking ahead of the train on foot. Plaintiff was thoroughly familiar with the crossing, having crossed it at least twice daily for a period of two years immediately preceding the date of the accident. The train was struck by the plaintiff's car at a point 244½ feet back from the front of the lead engine. Without engaging in mathematical formulae, it is apparent, considering the respective speeds of the train and automobile, that the train was occupying and moving on the crossing for some considerable time prior to plaintiff's approach.

Billie Marshall Peace, an officer of the El Dorado police department, was on duty at the time. He was a witness to the accident. He first noticed the plaintiff's automobile going south across the intersection of Washington and Elm Streets. Peace had stopped at the intersection of Elm and North Cleveland and intended to make a right-hand turn. It looked to him that the automobile "could have been going at a little fast rate of speed" so he followed it. He was never able actually to determine plaintiff's speed. He followed at a distance of a block or block and a half back of plaintiff's car. At that distance behind plaintiff, Officer Peace, in looking ahead, "happened to see something red on the track, and it seems to me like that was a box car, and Mr. Kinard was still going south." Peace was unable to say how far the plaintiff was from the tracks at that time. He testified:

"And at that time I saw this object on the track, and, I don't know, I just thought to myself look like he is going to hit it, and I saw his brake lights come on, and he was going straight and I saw those lights angle, and it appeared to me he had stopped or either slid off the road or either hit something and made those lights go to that angle."

He further testified:

"Q. As I understand it, you had no difficulty after you saw some-

thing on the track, you had no difficulty bringing your car under control and coming to a stop, did you?

"A. No, sir, I didn't have any trouble."

On cross-examination, Peace testified:

"Q. * * * you thought you saw something down there on the tracks; is that correct?

"A. Yes, sir.

"Q. And it seemed to you that it was a box car?

"A. Yes, sir.

"Q. Now, you were not able, were you, Mr. Peace, to see it plainly and definitely and know it was a box car down there, were you?

"A. All I could see was something moving that appeared to be a box car.

"Q. And you were about a block and a half behind him?

"A. Some distance back, yes, sir.

"Q. And from that block and a half behind him it appeared to you that it was probably a box car; is that right?

"A. It appeared to me it was a box car."

The defense was premised on a denial of negligence on defendant's part and an allegation that the plaintiff caused or contributed to the accident by his own negligence and that at the time he was under the influence of intoxicating liquor so as to render him incapable of driving in a reasonable and prudent manner.[1]

Arkansas Statutes Annotated, 1947, § 73–1004, provides:

" * * * In all suits against railroads for personal injury, property damage or death caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured, damaged or killed *is of less degree* than the negligence of the officers, agents, servants or employees of the railroad causing the injury, damage or death complained of; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributor[y] negligence." (Emphasis supplied.)

It was the plaintiff's theory that the defendant had created and maintained a particularly hazardous crossing and that it was negligent in not using a watchman or some other method to warn travelers of the presence of a train on the crossing. Plaintiff contended that while ordinarily a train occupying a crossing is notice to parties approaching in an automobile, " 'extraordinary hazardous conditions may exist, or occur, at certain crossings, which impose upon the railroad the duty to give special warning that a train blocks the crossing.' (179 S.W.2d at 652)", and that this was such a crossing. Supportive of its contention, plaintiff introduced evidence describing the physical situation of the tracks as consisting of the six sets of tracks, widely spaced, necessitating one to look both to the right and left before crossing each individual set of tracks; the sixth track curving in from the southeast in line with a small building which obstructed vision; the tracks being lighted by clusters of flood lights, one of which was on either side of track No. 5, but none south of track No. 6. As to the lighting, plaintiff testified:

"Well, actually under those flood lights there, especially in weather like it being that night, it creates a blind on your windshield, specially those lights hitting on the ice and rain and snow and stuff and you just can't see out into the darkness;

---

1. The only evidence to support the latter allegation was plaintiff's admission that he had one drink at approximately ten o'clock the previous evening, and the odor of liquor noticed about him after the accident which may have come from a broken bottle of whiskey found on the floor of his car.

after you come out into the darkness it takes a second or two for your eyes to get used to the darkness and you have to look up and down the track."

As to contributory negligence, it was plaintiff's contention that the only question involved on this appeal "is whether the appellee was guilty of contributory negligence that was equal to or greater than the negligence of the defendant". It is plaintiff's position that the jury determined that issue in his favor and that substantial evidence supports such conclusion.

It is defendant's contention that the plaintiff was guilty of contributory negligence as a matter of law and that such negligence was at least equal to if not in excess of any negligence established on the part of the defendant. Defendant cites a number of cases from the Supreme Court of Arkansas supportive of its position. Plaintiff, in the main, relies on Hawkins v. Missouri Pac. R. Co., 1950, 217 Ark. 42, 228 S.W.2d 642. An analysis of the holding of the Arkansas court in that case is necessary.

The accident there also occurred in the early hours of the morning. The defendant's freight train was standing still on the track while trainmen were making repairs. The track on which the defendant's train was standing was raised, leaving an open space of two feet and nine inches beneath the freight car bottoms and above the rails, directly in an automobile driver's line of vision so that he could look ahead beyond the railroad tracks onto the highway. Additionally, the boxcar blocking the crossing and directly in front of the plaintiff was an empty car with the doors on both sides wide open. Plaintiff and his passenger were able to see through or under the standing train without ever seeing the train itself until they were practically beneath it. They saw the undimmed lights of a car facing them from the other side of the tracks, which somewhat blinded them. They also saw a red, green and amber traffic light in operation in the middle of the street ahead of them beyond the railroad track. They had justification for believing that they had an unobstructed view down the highway and there were no active signals at the crossing to indicate that it was blocked by a train or anything else. The court reversed a directed verdict for the railroad company and remanded the case for trial. In so doing, it said, at page 644 of 228 S.W.2d:

"This Court has several times held that injured plaintiffs could not recover against railroad companies when automobiles were driven into the side of trains standing still on a highway crossing. Lowden, Trustee, v. Quimby, 192 Ark. 307, 90 S.W. 2d 984; Gillenwater v. Baldwin, Trustee, 192 Ark. 447, 93 S.W.2d 658; Kansas City Southern Ry. Co. v. Briggs, 193 Ark. 311, 99 S.W.2d 579; Fleming, Adm'x, v. Mo. & Ark. R. Co., 198 Ark. 290, 128 S.W.2d 986; Lloyd, Adm'x, v. St. Louis S. W. Ry. Co., 207 Ark. 154, 179 S.W. 2d 651. Other cases have reached the same result when the automobile was driven into the side of a moving train. Chicago, R. I. & P. Ry. Co. v. Sullivan, 193 Ark. 491, 101 S.W. 2d 175; Chipman v. Mo. Pac. R. Co., 195 Ark. 721, 114 S.W.2d 14. From these cases it is conceivable that one might leap to the conclusion that this Court has laid down a rule of law that a plaintiff can never recover when his automobile is driven onto a highway-railroad crossing into the side of a train. A reading of the cases cited makes it very clear that we have not laid down any such broad and all-embracing rule. We have not chosen to disregard the governing abstract principles of negligence and contributory negligence to the extent of saying that there never will be a crossing collision of that sort in which the railroad company or its employees are guilty of negligence, nor have we said that injured plaintiffs figuring in such collisions will always and invariably,

in every case that arises, be guilty of negligence equal to or greater than that of the defendant railroad. On the contrary, in Fleming, Adm'x, v. Mo. & Ark. Ry. Co., 198 Ark. 290, 294, 128 S.W.2d 986, 988, one of the cases cited supra, we said:

'It is the settled rule that whether failure of a railroad company to station a flagman at a crossing constitutes an omission of such care as an ordinarily prudent person would use under the same or similar circumstances, is a question of fact where there are obstructions which materially hinder the view of approaching trains, provided the crossing is used frequently by the public, and numerous trains are run. Inasmuch as permanent surroundings may create a hazardous condition, the rule of care goes further and requires precautions where special dangers arise at a particular time. It is said that the obligation exists, at an abnormally dangerous crossing, to provide watchmen, gongs, lights, or similar warning devices not only for the purpose of giving notice of approaching trains, but such care is to be equally observed where the circumstances make their use by the railroad reasonably necessary to give warning of cars already on a crossing, whether standing or passing, as where a crossing is more than ordinarily dangerous because of obstructions to the view interfering with the visibility of the responsible train operatives, or those approaching the track.' "

The Hawkins court then continued that the circumstances there under consideration

" * * * would indicate that *defendant created,* unintentionally but perhaps carelessly, *something like a trap for unwary night drivers.*" (Emphasis supplied.) 228 S. W.2d at 645.

The court relied upon several factors not found in the instant case, and which

we think sufficiently distinguish the cases so as to make Hawkins inapplicable here. These factors are:

" * * * *the lights visible across the town and unfamiliar with the of an autoist's vision above the raised tracks and beneath the bottoms of the stopped freight cars, the wide open doors of the boxcar through which lights across the track shone while the boxcar stood motionless and silent * * *.*" (Emphasis supplied.)

And:

" * * * *They were strangers in the town and unfamiliar with the particular crossing. * * *.*" (Emphasis supplied.) 228 S.W.2d at 645.

The court then says that "in this decision we overrule no earlier cases", referring to cases holding that where one runs into the side of a train there can be no recovery. It then distinguishes such cases as follows:

" * * * Each of the cases already cited, relied upon by defendant, is readily distinguishable. In Chicago, R. I. & P. Ry. Co. v. Sullivan, 193 Ark. 491, 101 S.W.2d 175; Chipman v. Mo. Pac. R. Co., 195 Ark. 721, 114 S.W.2d 14, and other cases like them, *the defendant's train was moving when it was struck, and the very fact of motion on the tracks ahead served as a warning signal to approaching drivers.* In Lowden, Trustee, v. Quimby, 192 Ark. 307, 90 S.W.2d 984, there was no evidence of surrounding circumstances such as in the principal case pointed (sic) to negligence in the defendant, *and the plaintiff, keeping no lookout though familiar with the crossing,* was guilty of a larger degree of comparative negligence than is indicated by the plaintiffs' evidence here. * * *" (Emphasis supplied.) Ibid.

The court distinguishes Lloyd v. St. Louis S. W. Ry. Co., 207 Ark. 154, 179 S.W.2d 651, where, as in Hawkins, lights

were shining through the open doors of a standing boxcar:

"* * * But there was no elevation of the tracks enabling the driver to see straight ahead beneath the cars, there were no blinding rays of light shining into his eyes from across the tracks, and the distance which the truck skidded after the brakes were applied—130 feet—showed that it was being operated at an excessive and dangerous rate of speed. *The driver was thoroughly familiar with the road and the crossing.* In this case likewise the conclusion was easy that the truck driver's negligence was clearly as great as or greater than the defendants." (Emphasis supplied.) 228 S.W.2d at 646.

An examination of the Hawkins case convinces us that it is not controlling here. In the instant case we find that the plaintiff was thoroughly familiar with the railroad crossing, he having traversed it at least twice daily for two years immediately preceding the occurrence of this accident. He was aware of the fact that there were six sets of railroad tracks crossing Washington Street. His knowledge of the entire situation must be weighed heavily against him. There is absent the lack of familiarity, the "trap" or optical illusion upon which the Arkansas court's determination in Hawkins was based. As to plaintiff's contention of the extra-hazardous physical situation of the crossing, as described supra, it is sufficient to note that the train had been moving on the tracks for a considerable period before the car struck the train. The obstructions mentioned by plaintiff are such as would interfere with one's view to the side, if they would interfere at all, and would not obstruct vision straight ahead, as was the train here involved. We have here, further, the devastating testimony of the police officer Peace, who, while driving a block or block and a half behind the plaintiff's car, bent on checking his speed, observed an object on the track—"something red on the track, and it seemed to me like that was a box car". And "at that time I saw this object on the track and I don't know, I just thought to myself like he is going to hit it * * *." Officer Peace had no trouble in controlling his vehicle and coming to a stop without a collision. Plaintiff had like opportunity to see defendant's train had he looked and that opportunity was at a time and place when he, too, could have brought his car to a stop and before he entered the area where he claims to have been momentarily blinded by the clusters of crossing lights.

■ Upon careful analysis, we are forced to the conclusion that under the Arkansas cases of Sullivan, Chipman and Lloyd, cited in Hawkins, supra, the plaintiff's contributory negligence here was established as a matter of law; and further, that as a matter of law such negligence was at least equal to if not greater than the negligence on the part of the defendant.

In Sullivan (193 Ark. 491, 101 S.W.2d 175) the plaintiff, a passenger in an automobile driven by another, received a jury verdict in her behalf where the car in which she was riding was driven into the side of a freight train, the accident occurring at nighttime. There was testimony which the court on appeal received as true that the train crew did not blow a whistle or ring a bell. In reversing the case and dismissing, the Supreme Court of Arkansas said:

"* * * While appellee stated that the train whistle was not blown or the bell sounded, she admitted that the automobile struck the boxcar behind the locomotive. *Therefore the locomotive was blocking the highway as the automobile approached and was of itself notice of its presence.*" (Emphasis supplied.) 101 S.W.2d at 175–176.

Chipman (195 Ark. 721, 114 S.W.2d 14) also involved a passenger in an automobile driven by another into a freight car that was being pushed over a grade crossing. The accident occurred at about nine o'clock on a dark night. The freight

cars were of a dark color. The plaintiff and the driver of his car were looking ahead, watching the road, but failed to notice the boxcar until within ten feet of it. The driver was killed and plaintiff seriously injured. The highway was used a great deal by the traveling public. Neither the plaintiff nor his driver was familiar with the exact location of the crossing. In affirming a directed verdict against the passenger, the Arkansas court said, at page 15 of 114 S.W.2d:

"The majority of the court are of opinion, not concurred in by the minority, that the instant case is controlled by the following cases: Missouri P. R. Co. v. Hancock, [195] Ark. [414], 113 S.W.2d 489, Jan. 17, 1938; Chicago, R. I. & P. Ry. Co. v. Sullivan, 193 Ark. 491, 101 S.W.2d 175; Kansas City Southern Ry. Co. v. Briggs, 193 Ark. 311, 99 S.W.2d 579; Lowden et al., Trustees v. Quimby, 192 Ark. 307, 90 S.W.2d 984; Gillenwater v. Baldwin, 192 Ark. 447, 93 S.W.2d 658; Missouri Pac. R. Co. v. Price, 182 Ark. 801, 33 S.W.2d 366; and that under the rules announced and applied to the particular facts in those cases appellant's own negligence in the instance (sic) case was the sole and proximate cause of his injuries."

In both Sullivan and Chipman it should be noted that the plaintiffs were *passengers* in vehicles driven by someone else and that contributory negligence of a passenger would no doubt be more difficult to establish than where the *driver*, as in the instant case, is attempting to recover.

The additional cases cited and distinguished by the court in Hawkins support the view that under the facts in this case plaintiff was guilty of contributory negligence sufficient to bar his recovery as a matter of law.

By way of conclusion the words of the court in Fleming v. Missouri & A. Ry. Co., 1939, 198 Ark. 290, 128 S.W.2d 986, seem peculiarly fitting herein:

"* * * The railroad crosses the highway at almost a right angle, and the approach is straight for at least a hundred yards. *No more effective precaution could have been adopted by the unfortunate driver than reasonable attention to the highway in front of him, under the illumination of his own headlights.*" (Emphasis supplied.) 128 S.W.2d at 988.

"* * * The freight cars were on the crossing, the highway was straight for a distance of a hundred yards, Fleming's headlights were ample, there were no abutting buildings or other obstructions, the train was not suddenly projected across the highway; and, although the weather was misty and perhaps there had been a slight rain, it is not shown that visibility was extraordinarily poor. *Even if such had been the case, that fact in itself enjoined upon Fleming additional care for his own safety.*" (Emphasis supplied.) 128 S.W.2d at 989.

On plaintiff's cross appeal it is charged that the court erred in not permitting the introduction of certain evidence on the issue of punitive damages and in not submitting the question of punitive damages to the jury. We have herein held that plaintiff's contributory negligence was sufficient to bar recovery as a matter of law. In Arkansas, such contributory negligence is a bar to recovery of punitive, as well as compensatory, damages, at least in the absence of an intentional and willful action to harm another. Ingersoll v. Mason, D.C. W.D.Ark., 1957, 155 F.Supp. 497, 503–504, aff'd 8 Cir., 1958, 254 F.2d 899. Thus we need not pass upon the correctness of the trial court's rulings on these assignments of error.

Accordingly, case No. 16,841 is reversed and remanded to the District Court with instructions to dismiss. Case No. 16,842 is in all things affirmed.