Lilla Mae Ford MARSHALL, Administratrix of the Estate of Floyd M. Marshall, Deceased, Appellant,

v.

HUMBLE OIL & REFINING COMPANY, Appellee.

Stanley R. MITCHELL, Administrator of the Estate of George L. Mitchell, Deceased, Appellant,

v.

HUMBLE OIL & REFINING COMPANY, Appellee.

No. 71-1467.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1972.

Decided May 3, 1972.

Rehearing Denied May 24, 1972.

Rehearing En Banc Denied June 7, 1972.

Henry Woods, Sidney S. McMath, McMath, Leatherman & Woods, Little Rock, Ark., for appellants.

W. P. Hamilton, Chowning, Mitchell, Hamilton & Chowning, Little Rock, Ark., for appellee.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Lloyd M. Marshall, lessee of a service station at Batesville, Arkansas, owned and built by Humble Oil and Refining Co. (Humble), and his employee, George L. Mitchell, sustained fatal injuries in an explosion-fire at the service station. Representatives of each man brought consolidated diversity actions against Humble seeking damages for wrongful death under the Arkansas Wrongful Death Act, Ark.Stat.Ann. § 27–901 et seq. (1962). A jury awarded the representative of the Marshall estate (lessee) $138,000 and the representative of the Mitchell estate (employee) $77,200.

The district court, on motion for judgment n. o. v., set aside these awards and dismissed the actions. The decedents' representatives have brought this appeal, and from our review of the record we conclude that the cases were properly submitted to the jury, and that judgment must be entered pursuant to the jury verdicts.

Both Marshall and Mitchell sustained severe burns over eighty-five to ninety percent of their bodies. Both men died the day following the accident, and only they were present at the time of the explosion-fire. No eye witness could, therefore, testify to the events at the station immediately preceding the onset of the explosion-fire. Humble, in its motion for a directed verdict, and in its post-verdict motion for judgment n. o. v., contended that no substantial evidence existed to support the plaintiffs' claim that Humble's negligence caused these deaths. The district court agreed with this contention and set aside the

verdicts as resting upon "speculation and conjecture."

The trial court, in instructing the jury, aptly summarized the crucial issue and the respective contentions of the parties as follows:

It seems to the Court that the real claim of the plaintiffs here, so far as negligence is concerned and proximate cause, is that the defendant was negligent in designing the storeroom, including the equipment therein and the door thereto, without adequate ventilation and without equipping the door with a threshold, with the alleged result being that when the door was closed, whether accidentally or on purpose, the air compressor would pull air under the door and lift it up to such a height that the fumes or vapors in the air would be ignited by sparks from the compressor. Now, if you find from a preponderance of the evidence that the defendant was guilty in the respect just mentioned, and that its negligence, if any, in that regard was a proximate cause of the explosion, then you should find against the defendant, unless you find for it under other instructions of the Court.

Now, on the other hand, the theory of the defendant is that the design of the door, the nature and location of the equipment in the storeroom, and the ventilation of the room had nothing to do with the explosion and that the explosion was caused by the fact that these men were using gasoline in their work in the storeroom, and that one of them while smoking or attempting to smoke ignited these gasoline fumes or vapors and caused the explosion and the flash fire that followed it; and, if you so find from a preponderance of the evidence that this is true, then your verdict should be for the defendant in both cases.

The record discloses the following facts. Lloyd Marshall, five days before the explosion-fire, assumed operation of the station from an earlier lessee of Humble. He was engaged in cleaning operations in the station during the following days. The explosion occurred in a storeroom which is connected to, and is on the same floor level with, the lubrication area where automobiles were serviced. A door connecting these two parts of the station opened into the storeroom. The storeroom contained an air compressor, an electric hot water heater, a gas central heating unit, a fuse box, electrical wiring connections, batteries, oil products, and two oil-grease drums located behind the storeroom door. The storeroom side of the door lacked any doorknob. The electrical switch that activated the compressor motor sat on top of the air compressor tank at a level of forty-seven inches above the floor. This switch was covered but not sealed. The air compressor operated automatically when pumping air into storage tanks which then furnished air under pressure for filling tires. The electric switch of the compressor created an arc or spark when it switched on and when it switched off.

The record shows the absence of a floor sill below the storeroom door, although construction specifications for the station called for its installation. As a result, a space of three-fourths inch existed between floor and door-bottom. The plans and specifications for the construction of the station also called for louvers or vents in the storeroom door to be located eighteen inches above the floor level. These vents had not been installed. The storeroom contained a window covered by iron bars. This window was partly open at the time of the explosion. A wall vent, eight by sixteen inches, located at the same level as the air compressor switch also afforded ventilation for the storeroom.

Plaintiffs offered evidence that the explosion-fire had occurred in the storeroom, that the storeroom door was found shut immediately following the explosion, that Mitchell and Marshall were trapped in the storeroom, that a passerby battered down the door, that the compressor motor was off immediately following the explosion-fire, but it had

been operating a short time prior to the explosion, and that persons who arrived on the scene saw smoke coming out of the storeroom window and saw fire about one foot high near the wall in the lubrication room.

Appellants-administrators contend that Humble was negligent in its design and maintenance of the station by providing inadequate ventilation for the storeroom and in failing to install a sealed electrical connection in the compressor switch to protect against electrical contact with gas fumes, and that this negligence operated proximately to cause the accident. The representatives of the decedents' estates claimed that the operation of the air compressor served to draw vaporized gasoline into the storeroom through the aperture at the bottom of the door, and that the interaction of warm and cool air currents in the room wafted these vapors in proximity to the spark created by the air compressor as it shut off. Consequently, the spark created by the switch ignited the gasoline vapors in the room and produced the explosion and fire. The appellants point to the testimony about fire along the wall of the lubrication room as showing the presence of gasoline vapors in the lubrication room which might be drawn into the storeroom area.

The district court felt that plaintiffs' evidence upon the issue of negligence, although weak, was sufficient for the jury. We agree. We note that on this appeal Humble argues the insufficiency of the evidence to show that its negligence, if any, proximately caused the explosion-fire.

On this causation question, the defendant-appellee introduced the testimony of a licensed practical nurse in charge of the emergency room of a Little Rock Hospital that Marshall, although suffering severe pain and described as being in a "semi-comatose" condition, stated, "We were cleaning with gas. Mitch lit a cigarette." The plaintiffs, however, produced testimony suggesting the absence of any container in the storeroom containing gasoline.

The jury by its verdict rejected the "cleaning-with-gasoline" theory of the cause of the explosion and fire. The district court, in considering the motion for judgment n. o. v., commented:

The position of the defendants was that the men were using gasoline in their cleaning operation, and that the explosion occurred as a result of one of them lighting a match or operating a cigarette lighter. To support that theory defendant relied in part on certain "dying declarations" of the two men. While the Court permitted the jury to give limited consideration to those declarations, they obviously did not amount to very much in the circumstances, and the jury obviously attached no weight to them.

The district court, however, in rejecting the plaintiffs' theory of causation did so on the basis of the alleged physical impossibility of the explosion occurring in the manner suggested by plaintiffs, because of the absence of any physical evidence of fire at the site of the compressor switch. The court said:

* * * It seems to the Court that if this explosion had been set off by a spark from the switch, the inevitable result would have been a burning, scortching [sic] or charring of the switch and switch box, and the undisputed evidence is to the effect that neither the switch, nor the switch box, nor adjacent areas on the compressor were at all burned, charred or scorched.

In support of the trial court's action, appellee argues that none of the testimony elicited during the trial indicated any fire damage to the pressure switch on the compressor; that the opinion of the plaintiff's expert witness was not based on established fact; and finally, that the expert opinion offered by the plaintiffs expressed only possibility and not probability regarding the cause of the tragedy.

■ In our review it makes no difference whether we apply the substantial evidence test of the federal courts or

that of the courts of Arkansas, since both use essentially the same test. Under either test we must give the party having the verdict the benefit of every favorable inference reasonably justified by the evidence. *Compare* Schenebeck v. Sterling Drug, Inc., 423 F.2d 919, 925 (8th Cir.1970); Keller v. Orion Insurance Co., 422 F.2d 1152, 1155 and n. 1 (8th Cir.1970); Meitz v. Garrison, 413 F.2d 895, 896 (8th Cir.1969) *with* Hawkins v. Missouri Pacific R.R., 217 Ark. 42, 228 S.W.2d 642, 643 (1950); Ellsworth Brothers Truck Lines v. Mayes, 246 Ark. 441, 438 S.W.2d 724, 729–730 (1969). See discussion in Oliver v. Hallett Construction Co., 421 F.2d 365, 371 (8th Cir.1970) (dissenting opinion).

In Ford Motor Co. v. Zahn, 265 F.2d 729 (8th Cir.1959), we said:

> Since defendant's contention is that under all the facts and circumstances of record no submissible case was made, it is well to bear in mind the general rules governing any plea to displace the jury verdict: (1) All disputed fact questions and permissible inferences must be viewed in the light most favorable to the plaintiff; (2) The question of negligence is usually for jury determination and it is only in rare situations where there is no occasion for reasonable men to differ, that the question becomes one of law for the court; and (3) It is only where all or substantially all of the evidence is on one side that a directed verdict should be entered.

The Arkansas Supreme Court has recited a similar view:

> \* \* \* A directed verdict for the defendant is proper only where there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury. *Hawkins, supra*, 228 S.W.2d at 644–645.

■ Moreover, without an eye witness, the jury may draw any conclusion from circumstantial evidence which is within "reasonable probability." *See* Twin City Plaza, Inc. v. Central Surety & Ins. Co., 409 F.2d 1195, 1203 n.8 (8th Cir.1969); *cf.* St. Louis Southwestern Ry. v. Farrell, 242 Ark. 757, 416 S.W.2d 334, 338 (Ark.1967); Hawkins v. Missouri Pacific R.R., *supra*, 228 S.W.2d at 644.

Reading the instant record with a gloss favorable to the verdict, we disagree with appellee's assertion that (a) there was no evidence upon which the jury might find that the pressure switch on the compressor provided the source of the ignition, and (b) that absence of any damage to the compressor pressure switch represents a physical fact inconsistent with the testimony of appellant's expert witness that the pressure switch probably provided the source of ignition of gasoline vapors in this case.

■ In addition to the testimony of appellant's expert, the defendant-appellee's own expert witness testified that if gasoline vapors came in contact with the air compressor switch it could cause an explosion "both inside the box and outside" since the box surrounding the switch was neither "vapor tight nor explosion proof." While this expert found no damage to the inside of the pressure switch upon examination almost a year after the incident in question, we do not understand his testimony to refute the possibility that the ignition was caused by the pressure switch, leaving traces of the explosion only outside the switch box itself. He said:

> If such a [gasoline vapor] mixture lighted beside that box, three things would happen. First of all, there would be an explosion. Second, there would be heat. And third, there would be soot.

The evidence is uncontroverted that an explosion took place. The fact that both of the individuals in the room were so severely burned indicates the presence of great heat. That heat, however, did not produce burning or distortion of concrete, wood, or metal objects in the room. The fire chief of the local volunteer fire department testified that upon his entry into the storeroom he sensed a smell "like gasoline had been burning" and while he did not see the signs of anything in the storeroom which had actually been burning, he did note "soot all over the place." In this case the jury also had before it several photographs of the storeroom taken following the accident, some of which showed evidence of blackening from soot and evidence of the existence of the explosion-fire. Under these circumstances, we think it was for the jury to determine whether the physical evidence in this case was such as to negative the claim of causation made by the appellants.

■ We next turn to an additional basis advanced by appellee in support of the judgment n.o.v., which appellant states as follows:

> For Mr. McCorkle's [appellant's expert] theory to stand it is absolutely necessary that there be some testimony going to establish the existence of the facts upon which his theory is based, i. e., that the door was closed, that the compressor came on and that the compressor then went off.

> There is no testimony going to establish any of the foregoing facts essential to Mr. McCorkle's theory.

We also disagree with this assertion. It would seem essential to the appellants' recovery that they show that the door to the storeroom was closed prior to the explosion. Ordinarily this door was kept open, propped back by a box or other container. The accident happened on an exceedingly hot day, about ninety-seven degrees Fahrenheit, and it would be highly unlikely that men working in the storeroom would cut off a source of ventilation by purposely closing the door. Witnesses, however, found the door closed immediately following the explosion. The explosion, of course, might have closed the door, but plaintiffs offered testimony from one of the witnesses first on the scene, that the decedent, Marshall, upon being rescued, was able to state that "the door blew shut on us." We think the jury could reasonably interpret this evidence as indicating that the door, usually propped open, shut accidentally prior to the explosion.

■ Finally, we turn to the contention that the trial court correctly set aside the verdict because the expert called on behalf of the Marshall and Mitchell estates testified regarding causation in terms of possibilities and not probabilities. The following hypothetical question and answer appears in the record:

> Q. (Direct examination for plaintiffs by Mr. McMath) Mr. McCorkle, I will ask you to assume that on August 5, 1970, at about 5:50 p.m. Floyd Marshall and George Mitchell were cleaning in the storeroom of this filling station. That they were cleaning without gasoline in the storeroom of this station; that there were gas vapors in the lube room; that the louver was open; that the window was open as indicated in the photographs which you have examined. Assuming that the door to the storeroom closed and assuming that the air compressor came on, assuming there was an explosion, assuming there was a fire in the holes of the wall between the lube room and the storeroom and assuming there was a fire on the floor in the back of the lube room, assuming fire on the floor and wall of the storeroom, do you have an opinion as to the source of ignition? Assuming that the temperature at this time was about 97° and assuming that within approximately a minute or a minute and a half after the explosion that the air compressor was not operating [would] you have an opinion as to the source of the ignition for this fire? A. Yes, sir, I would have an opinion as to a good source for it.

Q. What would your opinion be?

A. Pressure switch contact.

While the use of the term "good" is somewhat equivocal, we think that the testimony taken as a whole embraces more than mere possibilities, and, in the context of this case, should be construed as equivalent to opining a reasonable probability. *See, e.g.,* Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 109–110, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959); Trapp v. 4–10 Investment Corp., 424 F.2d 1261, 1268 (8th Cir. 1970); Leckbee v. Continental Airlines, Inc., 410 F.2d 1191, 1194 n.4 (5th Cir. 1969); St. Louis & S. F. Ry. v. Coy, 113 Ark. 265, 168 S.W. 1106, 1113 (1914).

 In summary, the jury in this case was entitled to determine the following: 1) gasoline vapors had collected in the lubrication room; 2) Marshall and Mitchell entered the storeroom to work; 3) contrary to the assertion of the appellee, there was no gasoline present in the storeroom area for cleaning purposes;[1] 4) the door closed accidentally; 5) the compressor started and its operation created a partial vacuum drawing gasoline vapors from the lube room into the storeroom under the closed door; 6) the interaction of warm and cool air in the storeroom produced air currents from the floor upward past the air compressor unit; 7) gasoline vapors came into the vicinity of the compressor and when the compressor motor cut off, the switch produced an electric arc which ignited the gasoline vapors, resulting in the explosion and fire; 8) the victims could not reopen the door to get out of the storeroom.

It seems to us that the jury was entitled to draw these inferences from known physical phenomena incorporated in the testimony of the plaintiffs' expert witness and from the circumstantial evidence in the case. By their verdict the jury rejected the only other plausible explanation for the explosion-fire, which explanation suggested that gasoline was being used by decedents for cleaning in the storeroom. We think that appellants have thus sufficiently established a reasonable probability that the explosion-fire occurred in the manner described by their expert.

Under these circumstances, the motion for judgment n.o.v. was improvidently granted. The cases were properly submitted to the jury and judgment should have been entered pursuant to the jury verdicts. Accordingly, we reverse.

---

[1]. In this connection we would note that the use of gasoline might be deemed dangerous, thus constituting negligence on the part of these individuals. Under Arkansas law, however, the defendant had the burden of proof to establish the contributory negligence of Marshall and Mitchell, *see, e. g.,* Kisor v. Tulsa Rendering Co., 113 F.Supp. 10 (W.D.Ark. 1953); Snow v. Riggs, 172 Ark. 835, 290 S.W. 591 (1927); Ark.Stat.Ann. § 28–101 (Repl.1962). It is apparent from the jury verdict that defendant had failed to sustain this burden.