573 F.2d 1004
 Glendon PARKER, Administrator of the Estate of Donald Wayne
Parker, Deceased, and Raymond Moore, Administrator
of the Estate of Albert Jacob Moore,
Deceased, Appellants,
v.
SEABOARD COASTLINE RAILROAD and ACF Industries, Inc., Appellees.
 No. 77-1090.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 16, 1977.
Decided April 4, 1978.
Rehearing and Rehearing En Banc Denied May 1, 1978.
 
 Henry Woods of McMath, Leatherman & Woods, Little Rock, Ark., for appellant; Sidney S. McMath, Little Rock, Ark., filed brief.
 J. C. Deacon and G. D. Walker, Jonesboro, Ark., for appellee.
 Before MATTHES, Senior Circuit Judge, STEPHENSON, Circuit Judge, and WANGELIN,* District Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Appellant-plaintiffs brought two separate actions for wrongful death against ACF Industries, Inc., the manufacturer of a hopper car, and Seaboard Coastline Railroad, the supplier of the hopper car, on theories of negligence and strict liability after plaintiffs' decedents suffocated while unloading the hopper car of fertilizer. The cases were consolidated for trial by jury. At the close of plaintiffs' evidence, the trial court[1] granted defendants' motions for directed verdicts and dismissed plaintiffs' complaints with prejudice.[2] Plaintiffs contend in this appeal that the court erred in directing a verdict and should have submitted to the jury their cause against ACF on the theory that the hopper car was negligently designed, and against Seaboard on the grounds the car was defective so as to be unreasonably dangerous. The thrust of defendants' response is that aside from insufficient proof on negligence and defective condition plaintiffs failed to present proof sufficient to create a jury issue on proximate cause. We reverse and remand for a new trial.[3]
 
 
 2
 Donald Parker, age 18, and Albert Moore, age 16, were found dead in a railroad hopper car at approximately 10:30 a. m. on September 15, 1973, at Hoxie, Arkansas. They were employees of Farm Services, Inc. and at the time were engaged in unloading a fertilizer known as ammonium phosphate, which had been delivered in a hopper car manufactured by defendant ACF and delivered by defendant Seaboard Railroad to Farm Services. The foreman directed the young men to unload the fertilizer from the hopper car by positioning the equipment and opening the unloading gates at the bottom of the hopper. The fertilizer was discharged into an auger device which carried it into the storage shed of Farm Services. Approximately 30 minutes later Parker and Moore reported that the unloading had commenced and in response to the foreman's inquiry indicated they were having no trouble. The foreman had been busy with other duties for about 30 minutes when he noticed the belt conveyor was still running but no fertilizer was coming out. He then undertook to locate Parker and Moore. He climbed on top of the hopper car when they did not respond to his call and noticed that two hatch covers were open and saw the boys lying in the bottom of the car partially covered by fertilizer. Examination disclosed fertilizer in their mouths and noses, and on their skin. Death was determined to have been caused by suffocation.
 
 
 3
 Plaintiffs claim ACF, the hopper car manufacturer, was negligent in designing and constructing the hopper car without protective grates or meshes on the hatches, without adequate ladders or means of escape from within the car, and without conspicuous and legible warnings of the hazards involved in working in and about the hopper car to persons such as decedents. It was plaintiffs' theory that decedents in furtherance of their duties, either fell or entered down into the hopper car where they were trapped. As no means of escape had been provided, they suffocated. Plaintiffs contend that it was foreseeable to the manufacturer that persons such as decedents would become floundered in the manner just described,[4] and such negligence was a proximate cause of plaintiffs' damages. ACF denies it was negligent and further denies that its negligence, if any, was the proximate cause of plaintiffs' damages.
 
 
 4
 Plaintiffs claim Seaboard supplied the hopper car involved in a defective condition which rendered it unreasonably dangerous, and that the defective condition was a proximate cause of plaintiffs' damages. The defects alleged are similar to those set out in plaintiffs' negligence claim against ACF. Seaboard denies liability on the basis it was not a supplier of the car under Arkansas' strict liability in tort statute, Ark.Stat.Ann. § 85-2-318.2 (Supp.1975). It denies that the car was defective in any respect, and further claims that a defect, if any existed, was not a proximate cause of plaintiffs' damages.
 
 
 5
 As previously indicated, both defendants contend that plaintiffs failed to present proof sufficient to create a submissible issue on proximate cause and the trial court therefore properly directed a verdict in favor of defendants at the close of plaintiffs' evidence. It is our view that this contention is the closest issue on this appeal, and therefore our discussion with reference to alleged negligence and defects in the hopper car will be limited to that necessary to place the proximate cause issues in proper focus.
 
 
 6
 In determining whether the trial court erred in granting a directed verdict we must review the record under well established principles that it should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. The evidence together with all reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. It should not be granted unless the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion. Lisa-Jet, Inc. v. Duncan Aviation, Inc., 569 F.2d 1044 (8th Cir. 1978); Barclay v. Burlington Northern, Inc., 536 F.2d 263, 267 (8th Cir. 1976); Hernon v. Revere Copper & Brass, Inc., 494 F.2d 705, 709 (8th Cir.), cert. denied, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105 (1974). The parties agree that the foregoing substantial evidence test of the federal courts is essentially the same as that of the Arkansas courts. See Marshall v. Humble Oil & Refining Co., 459 F.2d 355 (8th Cir. 1972).
 
 
 7
 The covered hopper car consisted of two completely separate hoppers, each hopper having four hatchways located on top of the car for loading purposes. They could also be used as a means for entering and leaving the interior of the car. However, only one of the four hatchways was equipped with an interior ladder. This ladder consisted of three rungs attached to the inside wall of the hopper. The space between the rungs was about 16 or 18 inches. There were two unloading gates separated by a partition about three feet high at the bottom of the hopper. The distance from the bottom of the hopper to the opening of the hatchway was about 12 feet.
 
 
 8
 On some occasions employees of Farm Services had gone into the hopper with a pick or hoe to dislodge fertilizer in order that it would flow through the unloading gate. One employee testified that decedent Moore had been with him inside the car for this purpose and the fertilizer (a different type white urea) caved in on them up to their waists and they reached up with the pick and hoe to grab the ladder in order to get out. Farm Services officials testified that all employees, including decedents, were instructed not to go in the hopper without getting someone from the office to supervise. Some employees testified they never received such instructions. When the bodies were removed, no pick, hoe, prod or auxiliary ladder was found inside the hopper or on the hopper car. The hatch door above the only interior ladder was locked from the outside. There was testimony by Farm Services' foreman that this fertilizer was free-flowing and not the type that would stick. However, the fire chief testified that at the time the bodies were removed he noted fertilizer was sticking to the sides of the bin.
 
 
 9
 Plaintiffs introduced evidence that the hatchways were sometimes opened by workers who unloaded the cars so they could see how close the compartment was to being empty. It was sometimes necessary to open two hatchways because the angle of light was such that it was too dark to see inside the compartment. The morning of the accident the foreman opened one of the hatches for the purpose of confirming the type of fertilizer shipped. In summary, taking the evidence most favorable to plaintiffs, it was reasonably foreseeable that loading and unloading personnel would have occasion to climb on and enter into the hoppers.
 
 
 10
 Plaintiffs offered expert testimony that the hopper car had been negligently designed and for safety purposes was defective in the following respects: (1) On top of the hopper there were too many hatches with large open areas through which one could accidentally fall. There should at least have been a grill or grating over the hatchway entrance when the hatches were open. (2) There were no warnings on the hopper or hopper hatches to indicate the absence of an interior ladder where none existed, or warnings as to hazards including commodity cave-in, suffocation, and entrapment.[5] (3) There should have been two ladders in each hopper to provide adequate egress from the hopper in case of accidental fall into the car or need for escape purposes, and two more rungs on each ladder so as to place the ladders within reach of one standing on the bottom of the car. Since the hopper car in the present case was not equipped with such safety features, plaintiffs' expert opined that its design was negligent and defective so as to be unreasonably dangerous.
 
 
 11
 With respect to the issues of negligence and defective product, defendants, through cross-examination of plaintiffs' witnesses, offered evidence that: the design of the hopper car was acceptable when built in 1955; it was originally designed to haul cement which at times would get wet and clog, and the purpose of the interior ladder was to enable railroad employees to enter the car for cleaning purposes; in recent years some 300 commodities have been shipped in covered hopper cars and since 1960 over 90% of the hopper cars built have no interior ladders and the railroads use their own ladders to go into the car for cleaning purposes; due to the large variety of products hauled in hopper cars it was the standard practice in the manufacturing and railroad industry not to place any warnings on the hopper cars, for to do so might conflict with loading and unloading procedures prescribed by the various shippers and receivers of the variety of products shipped; three-foot square hatches were standard in the industry in 1955 and hatch covers were standard in order that if a replacement cover was needed anywhere in the country it would be available, and depending on the size of the loading chute smaller hatches would produce spillage. In substance defendants contend that safety features were designed primarily to protect railroad employees. Further, because of the diverse products shipped the shippers and consignees of necessity were responsible for the safe loading and unloading of the products hauled.
 
 
 12
 After reviewing the evidence we are satisfied there are issues with respect to negligent and defective design upon which reasonable men may differ and thus it was error to direct a verdict on these matters at the close of plaintiffs' case.
 
 
 13
 Finally, appellees urge that assuming for purposes of argument only that there were submissible issues of negligence and defective condition in the design and construction of the hopper car, there was no proof sufficient to create a jury issue as to whether the same was a proximate cause of the tragic deaths that occurred. They claim it is a matter of conjecture and speculation as to why or how the youths entered the hopper car. Entry could only be gained through a hatchway at the top of the car and nobody knows why they went to the top of the car. No one knows whether both entered the car voluntarily, or both fell in, or one fell in and the other entered voluntarily, or conversely, one entered voluntarily and the other fell in in an effort to assist him. No one knows in what condition the youths were at the time of entry into the car whether they were injured, conscious or unconscious, or whether or not they were immediately buried in the fertilizer upon entry. There is no evidence that either of them could have used the escape devices suggested, or whether the design of the hatches, or a warning not to enter would have been of any avail. If entry was accidental, how or why did it occur?
 
 
 14
 The issue of proximate cause is generally for the jury. It may, of course, be shown by circumstantial evidence as well as by direct proof. As previously indicated the parties agree that the test of substantial evidence in the federal courts and in Arkansas is essentially the same. In Marshall v. Humble Oil & Refining Co., supra, 459 F.2d at 359, this court stated: "Moreover, without an eye witness, the jury may draw any conclusion from circumstantial evidence which is within 'reasonable probability.' (Citations omitted.)" In Ford Motor Co. v. Mondragon, 271 F.2d 342, 345 (8th Cir. 1959), this court noted in an Iowa diversity case that "Iowa has abandoned the 'exclusion of every other hypothesis rule' and now follows the 'more reasonably probable rule.' * * * It would appear that the test of the sufficiency of circumstantial evidence under federal law would be substantially the same. (Citations omitted.)" The court further stated, quoting from Adair v. Reorganization Inv. Co., 125 F.2d 901, 905 (8th Cir. 1942):
 
 
 15
 It is not necessary in establishing a necessary fact by circumstantial evidence that a party upon whom the burden of proof rests shall present evidence to dispel all contradictory inferences. It is necessary, however, that such party produce evidence of facts and circumstances which may be accepted by the trier of the fact as establishing with reasonable certainty the truth of the inference contended for.
 
 
 16
 Similarly, in Arkansas, it is not necessary for a plaintiff to demonstrate proximate cause with complete certainty. "It is enough that the plaintiff introduce evidence from which reasonable men may conclude that it is more probable that the event was caused by defendant than that it was not." Hill v. Maxwell, 247 Ark. 811, 448 S.W.2d 9, 10-11 (1969); see McKim v. Northwestern National Casualty Co., 256 Ark. 109, 505 S.W.2d 756, 757-58 (1974). Thus, the fact that plaintiffs' expert could not say that the decedents in this case would have been saved by the precautions he suggested is hardly a rational basis on which to hold that plaintiffs failed to establish a submissible issue on proximate cause.
 
 
 17
 That no one knows exactly how or why decedents became trapped in the hopper is not fatal to plaintiffs' case. As the Supreme Court of Arkansas has stated:
 
 
 18
 (W)here (there) are no eyewitnesses to the injury, and the cause thereof is not established by affirmative or direct proof, then all the facts established by the circumstances must be such as to justify an inference on the part of the jury that the negligent (or defective) conditions alleged produced the injury complained of. Where such is the case, the jury are not left in the domain of speculation, but they have circumstances upon which, as reasonable minds, they may ground their conclusions.
 
 
 19
 St. Louis, I. M. & S. Ry. Co. v. Hempfling, 107 Ark. 476, 156 S.W. 171, 174 (1913). In Hempfling, a railroad brakeman was killed while attempting to cross between two cars on a moving train. No one saw how the accident occurred, but neither car was equipped with grab-irons to make passing between cars safer. The court held that a jury could reasonably find that the negligent failure to provide grab-irons caused the brakeman to fall to his death.
 
 
 20
 Similarly, in Arkansas Kraft Corp. v. Johnson, 257 Ark. 629, 519 S.W.2d 74 (1975), a railroad employee fell off a moving train and was killed. Defendant contended that there was no substantial evidence that the employee's death was caused by any act on its part. Shortly before the accident, the employee had been seen standing behind and below a pile of logs which was negligently stacked on an adjacent railroad car. Several logs were found in the vicinity of the spot where the decedent's body hit the ground, but there was some evidence that those logs had fallen prior to the accident. Decedent's head bore a wound which would have resulted from neither being struck by a log or hitting a crosstie. Although it was far from certain that the decedent fell from the train and was killed because he was hit by a log from defendant's log pile, recovery was allowed because that sequence of events could be "fairly inferred." Id. at 82.
 
 
 21
 Just prior to the accident in the present case, decedents, acting within the scope of their employment, were unloading fertilizer from the hopper car. There was testimony from which a jury could infer that neither of the decedents had been warned of the dangers of climbing on or into a hopper car. Had such warnings been provided, it would be reasonable to conclude that they would have been followed. Certainly we cannot presume as a matter of law that the warnings would have been ignored.
 
 
 22
 Even in the absence of adequate warning, decedents might well have been saved had the hatch openings been covered by safety grates. And even if safety grates had not prevented these youths from entering the hopper car, longer and extra ladders could have prevented them from becoming trapped inside. As in Hempfling and Arkansas Kraft, the jury in the present case would not have needed "to guess, without any proof, as to the probable cause of * * * death." St. Louis, I. M. & S. Ry. Co. v. Hempfling, supra, 156 S.W. at 174.
 
 
 23
 In substance it is our view that in the present case there was evidence from which a jury could reasonably find that the negligent or defective design of the hopper car was a proximate cause of this tragic occurrence. They could also find to the contrary. Jury issues existed. The court erred in directing a verdict at the close of plaintiff's evidence.
 
 
 24
 Seaboard additionally claims that it was not a "supplier" and its hopper car was not a "product" as required by the strict liability statute. We disagree.
 
 
 25
 The Arkansas strict liability statute[6] subjects suppliers of defective products to strict liability for harm their products cause to persons and their property. This is in contrast with the strict liability rule under the Restatement (Second) of Torts § 402A (1965), which by its terms covers only "sellers."
 
 
 26
 The record discloses that Seaboard owned the hopper car involved and it was interchanged in interstate commerce and eventually was delivered by the St. Louis-San Francisco Railway Company to the siding of Farm Services, Inc. in Hoxie, Arkansas, where the tragic event occurred.
 
 
 27
 Although the Arkansas statute has not been construed with respect to "supplier" and "product," we are satisfied that Seaboard was a supplier and its hopper car a product under the plain meaning of the statute. See generally Legislative Note, 27 Ark.L.Rev. 562 (1973).
 
 
 28
 Reversed and remanded for trial.
 
 
 29
 WANGELIN, District Judge, dissenting.
 
 
 30
 I would affirm. Too many unanswered questions remained at the close of evidence. The jury would have been forced to speculate on the issue of proximate cause had the case been submitted to them. An inference that negligence or defective conditions caused this tragic incident would not have been justified.
 
 
 31
 After hearing the evidence and considering it in a light most favorable to plaintiffs, the trial court was correct in directing a verdict. I respectfully dissent.
 
 
 
 *
 The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Terry L. Shell, United States District Judge for the Eastern District of Arkansas, presided
 
 
 [2]
 The appendix furnished us does not indicate the reasons for the directed verdict. Counsel for Seaboard indicated in oral argument that the trial court's stated reason was based on the failure of plaintiffs to offer proof sufficient to make a submissible issue on proximate cause. We, of course, make our determination on the record furnished us
 
 
 [3]
 We repeat what we said in Hoppe v. Midwest Conveyor Co., 485 F.2d 1196, 1198 n. 1 (8th Cir. 1973):
 We again encourage trial courts to submit even doubtful questions to the jury. In this way the whole record can be made and the verdict rendered, thereby obviating the need for another trial if a reversal of a judgment notwithstanding the verdict ensues. See Passwaters v. General Motors Corp., 454 F.2d 1270, 1272-1273 (8th Cir. 1972).
 
 
 [4]
 Plaintiffs originally charged ACF with liability under the strict liability doctrine but abandoned this claim on this appeal for the reason that ACF supplied the hopper car to Seaboard prior to adoption of the strict liability doctrine in Arkansas. See General Motors Corp. v. Tate, 257 Ark. 347, 516 S.W.2d 602 (1974)
 
 
 [5]
 Plaintiffs' expert suggested use of the following warning signs:
 Caution. Hazardous work area on top. (Placed where car is mounted.)
 Danger. Do not enter car. Hazards include commodity cave-in, suffocation, entrapment. (Placed where car is mounted.)
 Danger. No escape ladder here. (Placed on hatch cover.)
 
 
 [6]
 Ark.Stat.Ann. § 85-2-318.2 (Supp.1975) provides:
 Liability of supplier Conditions. A supplier of a product is subject to liability in damages for harm to a person or to property if:
 (a) the supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing such product;
 (b) the product was supplied by him in a defective condition which rendered it unreasonably dangerous; and
 (c) the defective condition was a proximate cause of the harm to person or to property.